## LEOPOLD WISE and CHARLES WISE, Respondents, *v.* HUGH J. GRANT, Appellant, and MAIER ROTHSCHILD, Defendant.

*Evidence — declarations of the defendant subsequent to the levy under an attachment are not admissible as against the sheriff.*

Certain goods which had been sold to one Rothschild, upon the faith of certain representations made by him, as to his financial responsibility, were, three days later, levied upon by the sheriff under an attachment obtained by creditors of Rothschild, and, while the goods were thus in custody of the law, the agent of Rothschild made to the vendors of the goods admissions which tended to show the falsity of his principal's representations.

Soon after such vendors brought an action of replevin for the recovery of the goods, and therein proved, under objection by the sheriff, the admissions of Rothschild's agent.

*Held,* that as the goods were out of Rothschild's possession, and were in the custody of the law when the admissions were made, they were inadmissible in evidence as against the sheriff.

That the sheriff's position, in defense of the title secured by the levy, could not be assailed by hearsay evidence, nor by any testimony which would not be competent, as against Rothschild's transferree, or his privy in estate or legal representative.

APPEAL by the defendant Hugh J. Grant from a judgment, entered in the clerk's office of the county of New York on the 10th day of May, 1889, in favor of plaintiffs; and also from an order, entered in said office on the same day, denying a motion of said defendant for a new trial, after a trial at the New York circuit before the court and a jury, at which the value of the goods in question was fixed by the verdict of the jury at $1,075.24.

*Abraham Gruber*, for Grant, appellant.

*Horwitz & Hershfield*, for the respondents.

BARRETT, J.:

There is but one serious question presented by this appeal, and that is, whether the declarations of the debtor's son and agent, made after the levy, were admissible against the sheriff. The action was replevin for goods sold by the plaintiffs to Maier Rothschild. Rothschild did not defend, and the question presented was raised solely by the defendant Grant. The goods were sold on the 23d day of August, 1887. Three days later the sheriff levied upon these and other goods under an attachment against Rothschild in favor of other creditors. Thereupon the plaintiff, Leopold Wise, had an interview with Abraham Rothschild, who was Maier Rothschild's son and agent, at which the levy was discussed and the declarations in question made. The result of this interview was, that the plaintiffs determined to rescind the contract of sale made on the twenty-third, and to replevy the goods. They accordingly brought this action, and upon the trial they proved that the goods were sold to Rothschild upon the faith of certain representations as to the extent and situation of his real estate, and as to the amount of his indebtedness. It then became incumbent upon them to prove the falsity of these representations, and, to that end, Leopold Wise was permitted, under the plaintiffs' objection and exception, to testify to Abraham Roths-

child's declarations and admissions made at the interview already referred to. We think this was error; and as there was no other evidence of the fact, it is necessarily fatal to the verdict. Rothschild was not in possession of the goods when the admissions were made, and, consequently, the cases where declarations of an assignor in possession have, under certain circumstances, been admitted against his assignee (*Adams* v. *Davidson*, 10 N. Y., 309) are inapplicable. The discussions on this general subject have generally related to declarations of the assignor made prior to the assignment. The inadmissibility of his subsequent declarations to affect the title of an assignee in trust for creditors seems to have been universally conceded. There can, indeed, be no doubt that the declarations in question would have been clearly inadmissible, as against either a *bona fide* purchaser for value from Rothschild or an assignee in trust for Rothschild's creditors. (*Truax* v. *Slater*, 86 N. Y., 632; *Beste* v. *Burger*, 110 id., 644; *Bush* v. *Roberts*, 111 id., 278.) Is there any distinction in principle which makes such declarations admissible against the sheriff? We think not. By his levy the sheriff acquired a right in the property, of which the defendant in the attachment could not deprive him by any subsequent act or declaration. Then, too, the plaintiffs in the attachment secured a lien upon the goods in question by the levy thereon, and they could not be deprived of that lien by any subsequent act or declaration of the defendant against whom they were proceeding. It is said that the sheriff and the attaching creditors proceeded in the right of Rothschild and stood, so to speak, in his shoes. In a qualified sense this may be true, although the attachment proceeding was strictly *in invitum*. But the question is not whether the sheriff acquired a right superior to that possessed by Rothschild, which, of course, he did not, but whether Rothschild can, by a subsequent statement, admit away whatever right he did acquire. Such subsequent declaration was not admissible as a declaration against interest, for the reason that the property was then *in custodia legis*, and not in Rothschild's possession. It was simply a declaration in the interest of one of two contending creditors. In *Alexander* v. *Mahon* (11 Johns., 185), the action was trover by a sheriff (who had levied on goods under a *fi fa*), against one who had distrained the same goods, claiming as landlord of the

defendant in the execution. The landlord offered parol evidence to prove an acknowledgment of the tenancy by the defendant in the execution, which evidence was rejected, and, as the Supreme Court held, correctly. The reason assigned by the Supreme Court, namely, that as the testimony of the tenant was excluded at the instance of the landlord, it did not lie with the latter to complain of the rejection of the confession, has been criticised; but the rule itself has been fully approved. This case was referred to by KENNEDY, J., in his elaborate opinion in *Gibblehouse* v. *Strong* (3 Rawle, 437), and the following observations made thereon:

"In the report of this case referred to, it does not appear when the acknowledgments of Churchill, so offered to be given in evidence, were made; whether before or after the seizure does not appear. *If made subsequently to the seizure, as we may presume that they were, the decision is perfectly correct.* The right of the sheriff, who was the plaintiff, commenced with the seizure of the goods; and to admit the subsequent declarations of the defendant in the execution to be given in evidence to defeat the sheriff's right under the seizure would be to open a door to let in collusion and false pretenses, got up between defendants in executions and third persons, for the purpose of defrauding and hindering creditors in the collection of their just debts."

This reasoning is entirely applicable here. At the time of the levy, the title to the goods was in Rothschild, "subject," as was said by ANDREWS, J., in *Goodwin* v. *Wertheimer* (99 N. Y., 152), "to the right of the vendor, on the discovery of the fraud, to reassert his original right and reclaim the property, unless it has come to the hands of a *bona fide* purchaser." This title was secured by the levy, and the sheriff's position in defense thereof cannot be assailed by hearsay, or by any testimony which would not be admissible as against Rothschild's transferree, or his privy in estate or his representative.

Because of this error the judgment should be reversed and a new trial ordered, with costs to abide the event.

VAN BRUNT, P. J., and BARTLETT, J., concurred.

Judgment reversed and new trial ordered, with costs to abide event.